OPINION
{¶ 1} Defendant-appellant Donald Franklin appeals his conviction and sentence in the Stark County Court of Common Pleas on one count of aggravated burglary and one count of attempt to commit murder. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} On September 12, 2003 at approximately 4:00 p.m., Stephanie Baum, appellant's neighbor, was attacked and choked by an assailant in her home. Upon returning to her home with a headache, Baum laid on her bed. She heard footsteps coming up the stairs, and a man jumped on her back. She looked down and saw gloves, black skin and the long sleeve of a dark blue shirt. The man began to choke her, stating he wanted money for drugs owed to him by Baum's boyfriend, Michael Miller.
 {¶ 3} The man continued to choke Baum for approximately ten minutes. During this time, Baum's telephone rang and she pushed the button. Miller was on the other end of the telephone, and heard Baum conversing with the man. Miller drove to Baum's home, and located her on the bedroom floor with a sock in her mouth and a plastic bag over her head.
 {¶ 4} At the time, Miller heard the bathroom door slam. Miller went to the bathroom and began pounding on the door. Appellant was in the bathroom, urinating. Miller kicked the bathroom door open, and after a brief struggle, appellant ran out of the house. Miller followed appellant through the backyard, a neighbor's backyard, the parking lot of a Dairy Mart, an old rubber band factory where appellant was hiding behind a semi-truck trailer and finally back to the house where appellant resided.
 {¶ 5} The police responded at appellant's front door, appellant ran out the back door and was later arrested by Officer Varian. Appellant was wearing a blue hooded sweatshirt and had baseball gloves in his pocket.
 {¶ 6} Miller did not witness the attack in Baum's bedroom, but did see appellant in Baum's residence. Additionally, Baum did not see her attacker while in the bedroom, but could describe the blue long sleeves worn by her attacker and the gloves, which he was carrying at the time of his arrest.
 {¶ 7} Appellant told the police he was outside getting ready to cut the grass and became cold. He went inside and put on a hooded sweatshirt and baseball gloves. He said the next thing he knew he was walking up to Baum's house and went inside. He started heading upstairs and blacked out. He could not remember what happened during this time, and the next thing he remembers is being in a bathroom and having to urinate.
 {¶ 8} The State charged appellant with one count of aggravated burglary, a felony of the first degree, pursuant to R.C. 2911.11, and one count of attempt to commit murder, a felony of the first degree, pursuant to R.C. 2923.02.
 {¶ 9} On November 25, 2003, the jury found appellant guilty as charged of the offense of aggravated burglary and attempt to commit murder. On November 26, 2003, the trial court sentenced appellant to the maximum ten year prison term on each count to run consecutively, for a total twenty year prison term.
 {¶ 10} Appellant appeals his conviction and sentence, assigning the following as error:
 {¶ 11} "I. The trial court's finding of guilt is against the manifest weight and sufficiency of the evidence.
 {¶ 12} "II. The trial court erred in imposing the maximum sentence without complying with the statutory criteria or making the requisite findings."
 I {¶ 13} In the first assignment of error, appellant maintains his conviction is against the manifest weight and sufficiency of the evidence.
 {¶ 14} At trial, five witnesses appeared on behalf of the State and nine exhibits were admitted into evidence. Appellant did not testify and did not call any witnesses or introduce any exhibits.
 {¶ 15} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate courts function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 16} Appellant was charged with one count of aggravated burglary, a violation of R.C. 2911.11, and one count of attempt to commit murder, a violation of R.C. 2923.02.
 {¶ 17} R.C. 2911.11 states:
 {¶ 18} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 19} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 20} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 21} Section 2923.02 states:
 {¶ 22} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 23} Appellant is charged with attempt to commit murder. R.C. Section 2903.02 defines murder:
 {¶ 24} "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy."
 {¶ 25} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we find, as a matter of law, appellant's conviction was based upon sufficient evidence.
 {¶ 26} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.
 {¶ 27} The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin
(1983), 20 Ohio App.3d 172. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 28} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Based upon the facts noted supra, we find there was sufficient, competent evidence to support appellant's conviction, and the same was not against the manifest weight of the evidence.
 {¶ 29} Appellant was in Baum's residence, wearing blue long sleeves and gloves. He ran out of the house after struggling with Miller. He ran from Miller and then from the police. At the time of his arrest he was still wearing the blue hooded sweatshirt and had the gloves, identified by Baum, in his pocket. Further, Baum was strangled, and then left with a sock in her mouth and a plastic bag over her head. Upon review, the evidence was sufficient to sustain appellant's conviction and the jury did not lose its way and create a manifest miscarriage of justice.
 {¶ 30} Appellant's first assignment of error is overruled.
 II {¶ 31} In the second assignment of error, appellant argues the trial court erred in imposing the maximum sentence, without complying with statutory criteria or making the requisite findings.
 {¶ 32} The trial court sentenced appellant to two consecutive prison terms of ten years, the maximum sentence available for appellant's first degree felony offenses.
 {¶ 33} We first address appellant's assignment of error as it relates to the trial court's imposition of the maximum sentences for his convictions. Appellant was sentenced on two felonies of the first degree.
 {¶ 34} R.C. 2929.14(B) provides: {¶ 35} "* * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 36} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 37} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 38} In interpreting this requirement, the Supreme Court of Ohio has held: "R.C. 2929.14(B) does not require that the trial court give its reasons for its findings that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence."State v. Edmonson, 86 Ohio St.3d 324, 715 N.E.2d 131,1999-Ohio-110, syllabus. (Emphasis in original). Rather, "the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Id. at 326, 715 N.E.2d 131.
 {¶ 39} At the sentencing hearing, the trial court specifically found the shortest prison sentence would demean the seriousness of appellant's conduct and would not adequately protect the public. We find the trial court supported its imposition of the maximum sentences with the requisite record findings. Specifically, the trial court found appellant had committed the worst form of the offense as a result of the serious harm he had inflicted upon his victim.
 {¶ 40} We now turn to appellant's assertion the trial court erred in imposing consecutive sentences upon him. In order to impose consecutive sentences when an offender is convicted of multiple offenses, a trial court must first find consecutive service is necessary to protect the public from future crime or to punish the offender. R.C. 2929.14(E)(4). The court must also find consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Finally, the trial court must find one or more of the following: "a) the offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17 or 2929.18 of the Revised Code, or was under post-release control for a prior offense; b) the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct; or, c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Id. If a trial court imposes consecutive sentences, the trial court must give its reasons for imposing the given sentence. R.C.2929.19(B)(2)(c).
 {¶ 41} Appellant's prior record includes felony forgery, aggravated robbery, which he was convicted of and sentenced to prison, and another aggravated robbery charge, on which he was again convicted and imprisoned. At the sentencing hearing, the trial court stated:
 {¶ 42} "The Court has had the opportunity to review this matter. Of course, the Court sat through the trial. Court has also had the opportunity today to hear the prior criminal record also of Mr. Franklin and also to hear his statements here, ah, today.
* * * {¶ 43} "In looking at these offenses the Court, in deciding whether on each count, where the minimum sentence is three years, the maximum sentence is ten years, whether the sentence should be for the shortest term or the longest term or something in between those two, the Court is guided by several factors, including that the Court, if the Court wishes to provide the longest term, that the Court should, ah, do that in instances where the defendant has committed, in the words of the statute, the worst form of the offense. And the Court must also make a determination or one of the other factors to be looked at is if the defendant poses the greatest likelihood of committing future crime. In determining whether or not the Court will impose consecutive sentences, the Court must impose consecutive sentences or may impose consecutive sentences, I should say, when they are necessary to protect the public and to punish the defendant and they are not disproportionate to the conduct and to the danger the defendant poses and the Court must find at least one of several factors: First of all, that the crime was committed while awaiting trial or sentencing or under sanction or post-release control, and that does not apply; second, where the harm would be so great or unusual that a single term does not adequately reflect the seriousness of the conduct; or, third, that the offender's criminal history shows that consecutive terms are needed to protect the public, and the Court finds that certainly both of those two factors apply. This was, in the years that I've been in the criminal justice system, which are many now, probably one of the worst offenses I've ever seen. And I think the prosecutor in opening statement said this was a case of luck and it was a case of luck to some extent, because we're lucky we don't have a homicide here.
 {¶ 44} "I've heard Mr. Franklin's statements; I don't buy any of those. He has his right to make a statement in the courtroom and I respect his right to do that, as I do any defendant, but I don't buy any of those explanations.
 {¶ 45} "I find that the jury's verdict was, without any doubt in my mind, supported by the evidence that was presented.
 {¶ 46} "I find that he has committed the worst form of both offenses under which he is charged and that he poses the greatest likelihood of committing future crimes.
 {¶ 47} "I think that if we look at the overriding felony sentencing terms to punish him and deter others from committing further crimes — well —, I'm going to punish him; maybe it will deter some others, too, from entering into people's homes and getting away with this kind of conduct, because it's not going to be tolerated in this courtroom or by this Judge.
 {¶ 48} "It will, therefore, be the sentence of the Court that on the charge of aggravated burglary, that Mr. Franklin be sentenced to a term of ten years in an appropriate state correctional facility. He will be given a right to appeal that sentence, as it is a maximum sentence. He will be given any credit for any time served pursuant to statute and he'll be subject to the mandatory post-release control that's set by the prison system.
 {¶ 49} "On the attempt to commit murder, he will, likewise, be sentenced to a term of ten years. Again, the Court makes the finding that this is the worst form of the offense and that he poses the greatest likelihood for committing future criminal activities. He'll, again, be given credit for any time served pursuant to the statute on that ten-year sentence and he'll be subject to any post-release control set for him by the prison system.
 {¶ 50} "As the Court has already indicated, I have found that consecutive sentences are necessary here to protect the public and to punish the offender and they are certainly, certainly, certainly — I can't say that enough times — not disproportionate to the conduct and to the danger the offender poses and I would find that the harm was so great or unusual that a single term does not adequately reflect the seriousness of his conduct. And, also, that his criminal history shows that consecutive terms are needed to protect the public.
 {¶ 51} "I think one of the witnesses in this case said that she had literally had the, she was, had the crap scared out of her, and I don't mean that to be funny here. I mean this was an awful, awful event that this young lady had to go through and nobody should have to experience this. And as long as I sit here, nobody will have to experience this. So that will be a consecutive set of terms to equal 20 years and that will be all."
 {¶ 52} Tr. at 337-343.
 {¶ 53} Based upon the reasons the trial court expressed at the sentencing hearing, as set forth supra, we find the trial court's imposition of the consecutive maximum sentences was not contrary to law.
 {¶ 54} The second assignment of error is overruled.
 {¶ 55} Appellant's conviction and sentence in the Stark County Court of Common Pleas is affirmed.
Hoffman, P.J., Wise, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, appellant's conviction and sentence in the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.